UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

               Plaintiff,

   v.

BANK OF AMERICA ACCOUNT
   #XXXXXXXX4939, et al.

               Defendants.

No. 5:14-CV-723 (ATB)

_____

TAMARA THOMSON, Ass't U.S. Att'y, for Plaintiff
JACEK W. LENTZ, ESQ., for Claimants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## MEMORANDUM-DECISION AND ORDER

Currently before this court[1] is the claimants' amended motion to dismiss this civil asset forfeiture action for improper venue or, in the alternative, to transfer the action to the Central District of California. (Dkt. No. 38). The United States has filed a response in opposition to the motion (Dkt. No. 40), and the claimants have replied (Dkt. No. 41). For the reasons stated below, claimants' motion to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3), or to transfer the action under 28 U.S.C. §

---

[1] On November 12, 2014, Senior District Judge Kahn referred this case to me for all further proceedings and the entry of judgment, with the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Dkt. No. 37). When this court discovered that the consent form submitted by the parties did not conform with the current provisions of section 636(c), I directed the parties to re-submit an amended consent form if they still wanted the case referred to me. Judge Kahn referred the matter to me, based on the revised consent form, on January 13, 2015. (Dkt. No. 46).

1406(a) is denied with prejudice. Claimants' motion to transfer the action in the interests of justice, pursuant to 28 U.S.C. § 1404(a), is denied without prejudice.

I. **BACKGROUND**[2]

Through this action, the government seeks to forfeit almost $2 million in bank deposits and a Porsche automobile, all allegedly related to the illegal distribution of synthetic cannabinoids and related money laundering in the Northern District of New York, the Central District of California, and elsewhere. Sheldon A. Lenter, Daniel J. Lenter, and Johnny Charles Alroy have filed claims with respect to all but $39,652.40 of the seized assets. Related entities, including Eagle Eye Products, Inc. ("Eagle Eye")–associated with Sheldon Lenter–and Canyon Novelty Sales, Inc. ("Canyon")– associated with claimant Alroy–are alleged distributors of synthetic marijuana which operate from the Central District of California. The government alleges that these entities sold more than $563,000 worth of illegal synthetic cannabinoids to several "head shops" located in the Northern District of New York, including Zonen LTD ("Zonen") and Arizona Traders. The amended complaint details hundreds of financial transactions involving the defendant bank accounts, which allegedly relate to the purchase of synthetic marijuana by Zonen, Arizona Traders, and others in the Northern District of New York from the claimants' related businesses; the purchase of

---

[2] The government's brief recites the details of the procedural history of this civil forfeiture action, which I will not restate here. (Pl.'s Mem. of Law at 4-5, Dkt. No. 40). Citations to the records supporting this brief summary of the relevant background are set forth below where the court discusses the facts relevant to the venue transfer motion in more detail.

such substances by Eagle Eye and Canyon from manufacturers, including Real Feel Products, Inc. ("Real Feel"), which is located in the Central District of California, and ZenBio, LLC ("Zen Bio"); and various transfers of funds among and between the defendant bank accounts associated with the claimants and their related entities.

## II. CLAIMANTS' MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE

### A. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(3)

#### 1. Applicable Law

"On a motion to dismiss a complaint under Rule 12(b)(3) for improper venue, 'the plaintiff bears the burden of establishing that venue is proper.'" *Cold Spring Harbor Laboratory v. Ropes & Gray LLP,* 762 F. Supp. 2d 543, 551-52 (E.D.N.Y. 2011) (citation omitted). "'If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a prima facie showing of [venue].'" *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (citation omitted). In analyzing a claim of improper venue, a court must view all facts in the light most favorable to the plaintiff. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007). Whether to dismiss an action for improper venue is in the district court's sound discretion. *Cold Spring Harbor Laboratory,* 762 F. Supp. 2d at 551 (citing *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993)).

#### 2. Analysis

Claimants incorrectly suggest that the only statutory provision supporting venue

in this civil forfeiture action is 28 U.S.C. § 1395(a)'s provision allowing a forfeiture to be prosecuted "in the district where it accrues." (Claimants' Mem. of Law at 9, Dkt. No. 38). However, 28 U.S.C. § 1355(b)(1)(A), also authorizes a civil forfeiture action to be brought in "the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred . . . ." Section 1355(b)(1) "confers both jurisdiction and venue in civil forfeiture cases." *U.S. v. $198,573.85 in U.S. Currency*, No. 5:13-CV-1180 (DNH), 2014 WL 859137, at *3 (N.D.N.Y. Mar. 5, 2014) (citing *United States v. Contents of Account No. 2033301 in the Name of Freixas*, 831 F. Supp. 337, 339-40 (S.D.N.Y. 1993) (under the 1992 amendments to § 1355(b) & (d), "a civil forfeiture action now may be brought in the district where the underlying criminal activity occurred.").

The United States has clearly alleged that substantial criminal activity supporting the forfeiture in this action occurred in the Northern District of New York.[3] The amended complaint alleges that "[t]he defendant properties are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), pertaining to all moneys, . . . or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 801 et seq., all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and

---

[3] Tellingly, in their reply papers (Dkt. No. 42), the claimants did not respond to the government's arguments (*see* Pl.'s Mem. of Law at 7-11) that venue was proper in this action under 28 U.S.C. § 1355(b)(1), but focused instead on issues relating to whether a transfer in the interests of justice was appropriate.

securities used or intended to be used to facilitate any violation of 21 U.S.C. §§ 801 et seq." (Am. Compl. ¶ 23, Dkt. No. 31). The amended complaint includes multiple charts, documenting that the claimants' businesses accepted hundreds of thousands of dollars for selling and shipping allegedly illegal synthetic cannabinoids to "head shops" in the Northern District of New York. (Am. Compl. ¶¶ 36, 40, 54, 57, 64, 66, 68, 75-79). Those allegations clearly support the plaintiff's contention that the claimants conducted substantial activities in the Northern District of New York in furtherance of a conspiracy to distribute controlled substances under 21 U.S.C. § 846, which, in turn, would support a prima facie showing of venue for this civil forfeiture action in this district. *See, e.g., U.S. v. $198,573.85 in U.S. Currency*, 2014 WL 859137, at *3-4 (the government successfully alleged that "any of the acts or omissions giving rise to the forfeiture action" occurred in this district by stating that the defendant currency is traceable, at least in part, to drug sales in this district, which are overt acts in furtherance of a multi-jurisdiction drug conspiracy).

The United States also contends that "[t]he defendant properties are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) pertaining to any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960, or any property traceable to such property." (Am. Compl. ¶ 24). The government details how hundreds of thousands of dollars in proceeds from the sale of synthetic cannabinoids in the Northern District of New York were deposited in the claimants' bank accounts in order to fund the purchase by claimants

of more synthetic cannabinoids, from suppliers such as Real Feel and ZenBio, for resale in this district and elsewhere. (Am. Compl. ¶¶ 29, 34, 36, 40, 54, 57, 59, 64-66, 68-69, 75-79; Pl.'s Mem. of Law at 10-11). These allegations support the plaintiff's contention that substantial activity furthering a conspiracy to conduct "promotional" money laundering under 18 U.S.C. § 1956(a)(1)(A)(I) occurred in this district,[4] which provides the basis for the proposed forfeitures under section 981(a)(1)(A). *See, e.g.*, *U.S. v. $198,573.85 in U.S. Currency*, 2014 WL 859137, at *3-4 (allegations that Armstrong agreed to ship synthetic drugs to Doe in the Northern District of New York on at least two separate occasions and that Doe then executed a wire transfer of money originating from this district established that overt acts in furtherance of a money laundering conspiracy occurred in this district, supporting venue for the civil forfeiture action in this district). Thus the government has established a prima facie case that venue is proper in this district.

### B.  Motion to Transfer Pursuant to 28 U.S.C. § 1406(a)

28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could

---

[4] "Courts have recognized that '[p]ayment for drugs may constitute 'promotion' for the purposes of the money laundering statute when such payment encourages further drug transactions.'" *See, e.g.*, *United States v. Fitzgerald*, 496 F. App'x 175, 176, 178-79 (3d Cir. 2012) (shipment of proceeds of drug sales in Delaware to the supplier in Texas in order to buy more drugs supported the prosecution in Delaware of a promotional money laundering conspiracy, even though the monetary transactions were also part of the offense being promoted).

have been brought." "If the original federal forum is a proper venue, transfer of the action may be ordered under Section 1404(a), and Section 1406(a) is inapplicable." 14D Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 3827 at 523-26 (4th ed. 2013).[5] Having concluded that venue properly lies in this district, I will analyze claimants' motion to transfer venue under section 1404(a).

### III. CLAIMANTS' MOTION TO TRANSFER UNDER SECTION 1404(a)

#### A. Applicable Law

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer venue, "for the convenience of the parties and witnesses, in the interest of justice." The movant bears the burden of establishing the propriety of transfer by a clear and convincing showing. *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003). The moving party must establish that (1) the action is one that "might have been brought" in the proposed transferee district, and (2) the transfer is appropriate given the convenience of parties and witnesses and in the interest of justice. *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 401 (S.D.N.Y. 2005) (citing, *inter alia*, 28 U.S.C. § 1404(a)). The court assesses the balance of convenience and the interest of justice by weighing factors, including "'(1) the plaintiff's choice of forum,

---

[5] *Cf. Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 79-80 (2d Cir. 1978) (concluding that § 1406(a) permits courts to transfer in interest of justice whenever either personal jurisdiction or venue are improper); *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n. 9 (2d Cir. 2000) (citing *Corke* and recognizing propriety of section 1406 transfer to cure lack of personal jurisdiction even when venue is proper). Because there is no issue regarding personal jurisdiction in this district in this action, such cases do not alter my conclusion that section 1404(a) should be applied to analyze plaintiff's motion to transfer.

7

(2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.'" *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006) (citation omitted). "'There is no rigid formula for balancing these factors and no single one of them is determinative.'" *Indian Harbor Ins. Co.*, 419 F. Supp. 2d at 402 (citations omitted).

## B. Analysis

The government has conceded that this case could have been brought in the Central District of California, so the court must focus on whether the claimants have made a "clear-cut showing" that the transfer of this case from the Northern District of New York would promote the interests of justice and the convenience of the parties. *Indian Harbor Ins. Co.*, 419 F. Supp. 2d at 401. Because the "notions of convenience and fairness" relevant to a venue transfer motion must be assessed on a "case-by-case basis," *id.,* I will consider the most pertinent of the factors listed above in an order that facilitates the analysis of the motion in this particular case.

### 1. Plaintiff's Choice of Forum and Related Factors

The plaintiff's choice of forum is generally "given great weight." *D.H. Blair & Co., Inc.*, 462 F.3d at 107 (citation omitted). The claimants cite authority from another circuit, holding that where the plaintiff is the government, the deference in favor of the plaintiff's home forum is lessened, particularly where the government's

forum choice has "little connection to the operative facts of the lawsuit." *U.S. v. $776,670.00*, No. 2:13-CV-4108, 2014 WL 3866427, at *2 (D.N.J. Aug. 6, 2014) (citing *U.S. ex rel. Hollander v. MTD Products, Inc.*, Civ. Action No. 09-5507, 2011 WL 3501749, at *2 (E.D. Pa. Aug. 9, 2011)). However, other authority indicates that when "the inconvenience of the alternative venues is comparable there is no basis for a change of venue . . . even when one of the parties is a federal agency that will suffer inconvenience if forced to litigate in the defendant's district." *In re National Presto Industries, Inc.*, 347 F.3d 662, 665 (7th Cir. 2003) ("[w]hen government lawyers and investigators incur time and travel costs to litigate in a remote forum, the burden falls on the taxpayer, who finances the federal government and who is no less worthy of the protection of the law than corporate officers, shareholders, and employees").[6]

In a reply declaration, claimants' attorney states that he has been retained on a "pure contingency basis" because "I am informed and believe, the Government has wiped out all of the bank accounts and cash reserves available to Claimants Alroy and Sheldon Lenter. . . . I am informed and believe that the Claimants' ability to continue to defend this action is very much in doubt." (Lentz Reply Decl. ¶¶ 2-3, Dkt. No. 42-1). Claimant Sheldon A. Lenter makes the conclusory statement that "[i]t would be an unimaginable hardship for my company [Eagle Eye] to be involved in civil litigation

---

[6] "When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff, as the cases cited earlier make clear." *Id.* (citing, *inter alia*, *Wyndham Associates v. Bintliff*, 398 F.2d 614, 620-21 (2d Cir. 1968)).

9

in Syracuse, New York" because of the transportation costs and the negative impact of the employees' absences from work to attend depositions and trial. (Lenter Decl. ¶ 6, Dkt. No. 38-2). However, Sheldon Lenter also states that Eagle Eye is a "successful and popular seller of a wide variety of goods . . . [including to] "major retailers such as Target, K-Mart and Wal-Mart" (Lenter Decl. ¶ 1). He makes no sworn statement, nor provides any supporting documentation with respect to whether he, and/or Eagle Eye, actually have available financial resources beyond the $1.2 million dollars seized from various business, personal, and retirement accounts. Claimants Alroy, who has claimed $558,219.35 of the defendant assets, and Daniel Lenter, who claims $177,000 (Lentz Decl. ¶ 3, Dkt. No. 38-1), have provided no declaration or documentation regarding their financial positions or ability to pursue their claims in this district.

When filing a transfer motion under Section 1404(a), "the movant must support its motion with a detailed factual affidavit." *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d at 185. Motions to transfer have been denied when the claimants have not produced sufficient documentation of the financial hardships of litigating in the plaintiff's chosen forum. *See, e.g., U.S. v. Thirty-Five Thousand Five Hundred Dollars in U.S. Currency*, No. 09-11556, 2009 WL 4884977, at *2, 4 (E.D. Mich. Dec. 11, 2009) ("Although courts may consider 'the relative financial strength of the parties,' . . . in this case, even if Claimants may be in a weakened financial position relative to their pre-forfeiture days, they do not produce sufficient documentation for the Court to find that traveling to [this district] would pose a significant hardship.")

(citing *Thomas v. Home Depot, U.S.A.*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001); *U.S. v. Currency $41,180.97 In the Form of Charter One/Citizens*, No. 13-CV-14274, 2014 WL 4374372, at *4, 5 (E.D. Mich. Sept. 4, 2014) (recognizing, in the context of a civil asset forfeiture action filed by the government, that "plaintiff's chosen forum is entitled to substantial deference," and denying a motion to transfer venue notwithstanding claimants' conclusory contention "that it would be inconvenient and cost prohibitive for all of its witnesses to travel to Detroit for trial").

### 2. The Locus of Operative Facts

Through this action, the government seeks to forfeit the proceeds of bank account totaling $1,985,951.25, in addition to a Porsche, which claimant Sheldon Lenter values at $60,000. (Lentz Decl. ¶ 3; Lenter Decl. ¶ 9). The claimants claim ownership of all but $39,652.40 of the defendant assets; no one has filed a claim for the $39,652.40, which was seized from two accounts of Zonen, a "head shop" in this district. (Lentz Decl. ¶¶ 3, 5). The businesses controlled by the complainants and Real Feel–the manufacturer of synthetic cannabinoids "most critical to the allegations in the Complaint"[7]–are located in the Central District of California. (Claimants' Mem.

---

[7] It appears that the claimants' emphasis on the significance of Real Feel as the "critical" manufacturer of synthetic cannabinoids resold by claimants is strongly influenced by that entity's location in California. The government alleges that the claimants' companies made almost $1.5 million in payments to Real Feel, presumably for illegal controlled substances. (Lentz Decl. ¶ 18; Am. Compl. ¶¶ 59, 69). However, the government also alleges that Eagle Eye made $3,750,366 in purchases from ZenBio and related entities–another manufacture of synthetic cannabinoids. (Am. Compl. ¶¶ 34, 65). Sheldon Lenter has represented that, to the best of his knowledge, ZenBio was not located in New York; but, presumably, it was not located in California, or the claimants would have brought that to the court's attention. (Lenter Decl. ¶ 13).

11

of Law at 8; Lentz Decl. ¶¶ 2, 16, 19-20). Claimants contend that the government justifies forfeiture of the "overwhelming majority" of the defendant assets based on claimants' payments to manufacturers of synthetic cannabinoids in California and states other than New York, "rather than what they had obtained from retail sales in New York or elsewhere." (Claimants' Mem. of Law at 8). Based on this and related facts, the claimants argue that "this case is only tangentially connected to New York" and should be transferred to the Central District of California under section 1404(a). (Claimants' Mem. of Law at 9, 11).

However, as the claimants acknowledge, this case arose from an investigation, started in 2013, of the sale of synthetic cannabinoids by several retailers in the Northern District of New York, including Zonen and Arizona Traders. (Am. Compl. ¶ 27; Lentz Decl. ¶ 6). The government seized, from Zonen and Arizona Traders, substantial quantities of synthetics cannabinoids, and agents of those "head shops" stated that these substances were purchased from Eagle Eye. Samples of the seized product were analyzed by the DEA Northeast Laboratory and many were found to contain illegal scheduled drugs and/or drug analogues. (Am. Compl. ¶¶ 34-40; Lentz Decl. ¶¶ 6, 8-9, 11-12). Based upon records that federal agents recovered during the execution of search warrants and bank records obtained via subpoena, government investigators estimate that claimants generated at least $563,458.88 in proceeds through hundreds of sales of illegal controlled substances in the Northern District of New York. The $563,458.88 in proceeds constitutes more than 27% of the total

amount of currency seized in this civil forfeiture action. (Pl.'s Mem. of Law at 8).[8]
Thus, while the multi-district drug and money laundering conspiracy providing the basis for the forfeitures sought by the government may have greater links to the Central District of California, this action is also substantially connected to transactions that occurred in the Northern District of New York.

In the sole asset forfeiture case upon which claimants rely to try to overcome the deference due to the government's choice of forum, the connections between the requested forfeitures and the district of filing were far less significant than they are in this action. The narcotics/money laundering civil forfeiture action in *U.S. v. $776,670.00*, was filed in the District of New Jersey, based solely on the fact that one of about 100 structured deposits made in eight different states was made in New Jersey. *U.S. v. $776,670.00*, 2014 WL 3866427, at *2. By contrast, in *U.S. v. Currency $41,180.97*, 2014 WL 4374372, at *2, 4, 6, the court deferred to the government's choice of venue in the Eastern District of Michigan although the bank accounts, into which proceeds of alleged prescription drug trafficking were deposited, were in Pennsylvania; all of the claimants' officers and employees were in Pennsylvania; and much of the other conduct supporting the forfeiture occurred in

---

[8] This total may represent an update of the financial analysis of invoices from the claimants' companies by the government since the time of the amended complaint, which documents approximately $320,000 of purchases of synthetic cannabinoids from the claimants by "head shops" in this district. (Am. Compl. ¶¶ 74-79). However, the amended complaint also documents, from bank records, that the New York "head shops" paid more than $820,000 to the claimants' companies. (Am. Compl. ¶¶ 36, 40, 54, 57, 64, 66, & 68).

13

Pennsylvania. Among the factors upon which the court relied to deny claimants' motion to transfer venue were the fact that the DEA investigation of the online pharmacy scheme started in Michigan and that online drug sales by "patients," including those who appeared in the Pittsburgh store front (which was incorporated in Michigan), were made through the key pharmacist in Michigan. *Id.* This court concludes that the claimants have not met their burden of establishing that the locus of facts pertinent to this forfeiture action strongly favors venue in the Central District of California over the forum selected by the government. *See Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 697 (S.D.N.Y. 2009) (where the loci of operative facts lie in two or more venues, this factor becomes neutral in consideration of the balance of conveniences under 28 U.S.C. § 1404(a)).

### 3. The Convenience of Witnesses

"The convenience of non-party witnesses is one of the most important factors in determining where to transfer a case." *Verilux, Inc. v. Ottlite Technologies, Inc.*, No. 09-CV-717, 2009 WL 2710222, at *6 (D. Conn. Aug. 20, 2009); *DLJ Mortgage Capital, Inc. v. Cameron Fin. Group, Inc.*, No. 07 Civ. 3746, 2007 WL 4325893, at *5 (S.D.N.Y. Dec. 4, 2007) ("[T]he convenience of witnesses is typically the most important factor in a motion pursuant to § 1404(a)."). "[W]here a party seeks to transfer based on the convenience of witnesses, he must 'clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.'" *Marcotte v. Joyce Beverages, Inc.*, No. 87 CIV. 7412, 1990 WL 52123, at *2

(S.D.N.Y. Apr. 17, 1990) (citation omitted); *Indian Harbor Ins. Co.*, 419 F. Supp. 2d at 401 (movant must "'name the witnesses who will be appearing and describe their testimony so that the court may measure the inconvenience caused by locating a lawsuit in a particular forum'") (citation omitted).

In this case, the government expects that it would require testimony from the non-party owners and employees of the four or more "head shops" in the Northern District of New York which purchased synthetic cannabinoids from the claimants' businesses, and from whom samples of illegal substances were seized. (Am. Compl. ¶¶ 34-40, 75-79) Further, the government would necessarily rely on the officers and agents who were involved in the investigation in the Northern District of New York, who generated the extensive analysis of records reflected in the amended complaint. (Pl.'s Mem. of Law at 24). In his reply declaration, claimants' counsel states that "[t]he Claimants do not intend to dispute the fact that they sold "herbal incense" to the Government's witnesses" and are "willing to make admissions and enter into appropriate stipulations" with respect to those witnesses. (Lentz Reply Decl. ¶¶ 4, 5). However, counsel's initial declaration points out various issues that claimants have with respect to the allegations in the complaint attributable to the "head shop" witnesses; so it is by no means clear that the government would still not need to call these witnesses at trial. (*See, e.g.*, Lentz Decl. ¶ 8, 15, 17). Unless and until the claimants make more specific admissions, in an answer to the amended complaint, or in written stipulations, the court will not discount the convenience of the

government's non-party witnesses in the Northern District of New York.

In trying to establish who the "key" witnesses will be at trial, the claimants argue that the critical issues in this action will be "the legality of the various chemical compounds allegedly contained within the products sold by the Claimants" and "nature of the product sold by [Real Feel] and the business relationship between [Real Feel] and Claimants." (Lentz Decl. ¶¶ 22, 26). Based on this assumptions, claimants' counsel contends that they key witnesses in this case are all located in the Central District of California–claimants' "potential" expert witnesses, all from California;[9] witnesses related to Real Feel, "all of whom are presumably based in Southern California"; the staffs of claimants' businesses; and claimants' forensic accountant, who is from the Central District of California. (Lentz Decl. ¶¶ 22, 26, 28-30).[10]

---

[9] Claimants' counsel represents that his firm "has not identified anyone in the Northern District of New York who even remotely possesses the experience and qualifications [as experts] required in this case." (Lentz Decl. ¶ 22). He also states that he has "been advised" the the claimants routinely "obtained independent laboratory reports in order to ascertain whether the products they sold were legal" and that, to his "best knowledge," none of those laboratories are located in the Northern District of New York. (Lentz Decl. ¶ 24).

[10] Claimants' counsel also argues that most of the documents relevant to the two critical issues he identifies would be located in the Central District of California. However, "the location of documents is entitled to little weight unless defendant makes a 'detailed showing of the burden it would incur absent transfer.'" *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d at 402. *See also Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."). On the other hand, the government has samples of synthetic cannabinoids seized from "head shops" in this district and analyzed at the DEA's Northeast Laboratory. (Am. Compl. ¶¶ 34, 37). The problems inherent in transporting such illegal substances across the country for use at trial is a more significant factor, and one that weighs against transferring this case to California.

16

While it is reasonable to assume that the legality of the substances sold by claimants will be a critical issue in this case, the government will undoubtedly offer evidence on that issue through the testimony of the New York "head shop" employees from which the government seized samples, who can establish whether the claimants were the source of those samples. (See Am. Compl. 34-35, 37-39). Claimants' reliance on potential expert witnesses from California, who would testify about the chemical composition of the substances sold by the claimants, does not provide any significant support for transferring the action from this district. The government's expert witnesses who would testify about the drugs and analogue drugs found in the substances seized in the Northern District of New York work on the east coast and would be equally inconvenienced if they were required to travel to California for trial. (Pl.'s Mem. of Law at 24). Similarly, while the claimants may have a forensic accountant in California who would be inconvenienced by travel to New York, the government agents who exhaustively analyzed the records presented in the amended complaint would be burdened by travel to California if the case was transferred. In any event, given that expert witnesses are selected by parties in preparation for litigation and compensated for their time, their convenience is not a weighty factor in my consideration of the Section 1404(a) transfer motion. *See, e.g., Cerussi v. Union College*, 144 F. Supp. 2d 265, 269 (S.D.N.Y. 2001) ("it is well settled that 'the location of expert witnesses is irrelevant to a transfer decision'") (citations omitted).

The claimants suggest that they may introduce proof regarding the legality of

17

various substances from representatives from Real Feel, but they offer only the presumption that these witnesses would be from California, without identifying any particular witnesses. In their reply papers, claimants' counsel acknowledges that "their motion has not provided a great deal of specific information with regard to the identity and substance of the evidence to be provided . . . related to [Real Feel]" and states that efforts to provide more specific information is continuing. (Claimants' Reply. Mem. of Law at 5-6; Lentz Reply Dec. ¶ 6). In the absence of more concrete information about potential Real Feel witnesses, this court cannot find that the claimants have made an adequate showing that the convenience of any such witnesses favors transfer of this action to California.[11] *See, e.g., U.S. v. Thirty-Five Thousand Five Hundred Dollars in U.S. Currency*, 2009 WL 4884977, at *3 (claimants have not satisfied their burden to justify transfer of the action "inasmuch as they offer no information regarding the identity of witnesses that they plan to call . . . [n]or an outline of the material information their 'potential key witnesses' may provide").

Claimant Sheldon Lenter states that "it is fair to assume that all of [the 14 employees and sales representatives who live in the Los Angeles area] would have some information relating to the government's allegations and would thus . . . be

---

[11] The claimants suggest that they might have difficulty compelling third-party Real Feel witnesses to appear in the Northern District of New York. (Claimants' Mem. of Law at 15). The government might have similar problems compelling the "head shop" witnesses from this district to appear in California. Given the uncertainty as to which set of witnesses may prove to be more critical as this case develops, and given the option of presenting the evidence of third-party witnesses through depositions taken near where they reside, this factor is not particularly relevant to this court's current analysis of the transfer motion.

relevant to the discovery process." (Lenter Decl. ¶¶ 3-5). In the absence of more specific information about what key information particular claimant representatives would have, the conclusory claims about the cost and inconvenience to claimants of litigating this case in New York provide little support for their transfer motion. *See, e.g.*, *U.S. v. Currency $41,180.97*, 2014 WL 4374372, at *5 (although claimant has identified numerous witnesses in support of its transfer motion, "its position is undercut by the fact that it has failed to provide any information regarding their material testimony or who among those identified may be a key witness"). In any event, the relative convenience of witnesses of opposing parties is not a significant factor in evaluating a transfer motion. *See Kroll v. Lieberman*, 244 F. Supp. 2d 100, 103 (E.D.N.Y. 2003) ("[w]here transfer would merely shift the inconvenience from one party to the other, plaintiff's choice of forum is not to be disturbed") (citations omitted).

### 4. Conclusion

After balancing the factors that are particularly relevant to the motion in this case, the court concludes that the claimants have not made a convincing showing that a transfer of this action to the Central District of California would be in the interests of justice. However, the court denies claimants' motion under 28 U.S.C. § 1404(a) without prejudice, because they may be able to produce further evidence with respect to factors such as the convenience of the critical non-party witnesses and the financial burden on the claimants to litigate the case in plaintiff's chosen forum. Concrete

evidence with respect to those issues could materially affect the court's evaluation of whether a transfer of venue best serves the interests of justice.

**WHEREFORE**, it is

**ORDERED** that claimants' motion to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3) or to transfer the action under 28 U.S.C. § 1406(a) (Dkt. No. 38) is **DENIED WITH PREJUDICE.**, and it is

**ORDERED** that claimants' motion to transfer the action in the interests of justice, pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 38), is **DENIED WITHOUT PREJUDICE**, and it is

**ORDERED** that, within 21 days of the date of this order, the claimants shall file an answer or other response to the plaintiff's amended complaint, and it is further

**ORDERED** that, within 60 days of the date of this order, counsel for the plaintiff, after consultation with claimants' counsel, shall prepare and submit a proposed Stipulation pursuant to Fed. R. Civ. P. 16(b) and General Order 15.

Dated: January 15, 2015

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge